746 A.2d 519 (2000)
328 N.J. Super. 561
RAMAPO BRAE CONDOMINIUM ASSOCIATION, INC; Diane Bennett; Zachary and Anne Allegretti; Ileen Channer; Joseph and Leslie De Meo; Dorothy Natale; Paul and Lucine Baumgart; Hermat and Rola Barkho; *520 Vojtech and Judy Cerny; Fermin and Nancy Diaz; Alice Boyd-Williams; Rajendra and Surya R. Patel; David and Nancy Violette; James and Debra Burnette; Henry and Show-Ling Ho; Thomas and Janet Hamill; Robert and Rhonda Smith; Peter and Mary Jane Durante; Harold and Tammy Brendel; Scott and Linda Goodwin; Raymond and Laura McDonald; Steven and Veronica Marino; Carl and Janice Arnold; Sandra Boyd; Victor and Kathleen Velasquez; Dinesh and Bahrti Sanghvi; Gloria Melendez; Enrique and Alba Vitery; Guillermo and Maria Escobar; Jo Ann Wargo; John and Rose Marie Adamkovich; Thomas and Nancy Vetter; Charles and Dianne Mc Cready; Steven and Sharlene Scherer; Kampi and Tara Pragdat; Jirina Mancic; and Albert and Sarah Yip, Plaintiffs-Appellants,
v.
BERGEN COUNTY HOUSING AUTHORITY; North American Housing Corporation; T.R. Arnold & Associates; E.O. D'Alessandro, Inc., a/k/a E.O. D'Alessandro Garden Center; Tarquini & Elkin/Sobolta, Architects and Planners; Residential Warranty Corporation; Merchants and Business Men's Insurance Company; Township of Mahwah, Defendants-Respondents, and
Housing Authority of Bergen County, Defendant-Respondent/ThirdParty Plaintiff,
v.
Meridian Construction Company, Third-Party Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1999.
Decided March 1, 2000.
*521 John F. Darcy, Ridgewood, for plaintiffs-appellants (McElroy, Deutsch & Mulvaney, attorneys; Mr. Darcy of counsel; Kevin P. Harkins, on the brief).
Terrence J. Corriston, Hackensack, for defendant-respondent Bergen County Housing Authority (Breslin & Breslin, attorneys; Mr. Corriston, on the brief).
Dean Constantine, Livingston, for defendant-respondent Tarquini-Elkin/Sobolta Architects (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Mr. Constantine, on the brief).
Thomas J. Perry, Morristown, for defendants-respondents Residential Warranty Corporation and Merchants and Business Men's Insurance Company (Riker, Danzig, Scherer, Hyland & Perretti, attorneys; Shawn L. Kelly, of counsel; Thomas J. Perry, on the brief).
*522 Frank M. Coscia, for defendants-respondents North American Housing Corporation and T.R. Arnold & Associates (Gallo Geffner Fenster, attorneys; Mr. Coscia, of counsel; Elizabeth R. Millard, on the brief).
John G. Tinker, Jr., Cedar Knolls, for respondents Meridian Construction Company and E.O. D'Alessandro (Leary, Bride, Tinker & Moran, attorneys; Mr. Tinker, on the brief).
Before Judges STERN, KESTIN and WEFING.
The opinion of the court was delivered by WEFING, J.A.D.
Plaintiffs appeal from two orders granting summary judgment to all defendants. After a careful review of the entire record and consideration of all the arguments advanced on appeal, we affirm in part, reverse in part and remand for further proceedings.

I
Prior to setting forth the legal issues presented, ease of understanding requires that we identify the parties and their relationships to the present controversy. We shall identify them in the order in which they appear in the caption, which does not necessarily correlate with their involvement with this matter, either chronologically or substantively.
Plaintiff Ramapo Brae Condominium Association, Inc. (the Association) is responsible for the management and operation of the condominium development known as Ramapo Brae in Mahwah, New Jersey. The individual plaintiffs are unit owners within Ramapo Brae. Defendant Bergen County Housing Authority, more properly Housing Authority of Bergen County (the Authority), is a body corporate and politic. N.J.S.A. 40A:12A-17. The Authority's function is to provide assistance to those who need it to obtain safe, decent and affordable housing. In furtherance of that mission, the Authority developed Ramapo Brae. It is undisputed that the Authority acted as general contractor for that development.
Defendant North American Housing Corporation (North American) built the modular units used to construct the portion of the development at issue here. During the manufacturing process, North American utilized the services of defendant T.R. Arnold & Associates (T.R. Arnold) to inspect the units for purposes of quality control. Defendant E.O. D'Alessandro, Inc. (D'Alessandro) was hired by the Authority to perform landscaping work at the development. Defendant Tarquini-Elkin/Sobolta (Elkin/Sobolta) is a joint venture created for this project; it provided professional design services to the Authority. Elkin/Sobolta's original design was based upon stick-built construction. For reasons of cost, the Authority rejected stick-built construction in favor of modular construction. Defendant Residential Warranty Corporation (Residential Warranty) issued a ten-year limited warranty agreement to the Authority for this development. Defendant Merchants and Business Men's Insurance Company (Merchants Insurance) issued the insurance policy which backed Residential's warranty. The project is within the confines and jurisdiction of defendant Township of Mahwah (Mahwah). Although the complaint includes Mahwah in the caption, the body of the complaint does not seek relief against it. The Authority filed a third-party complaint against Meridian Construction Company (Meridian).[1] No other party asserted a claim for relief against Meridian.
Plaintiffs' complaint as amended contains thirty-one counts; four of these are directed toward fictitious defendants who *523 were never identified. We are thus concerned with twenty-seven counts. Twelve are directed largely to the Authority; they allege breach of fiduciary duty; breach of the duty of loyalty in serving as both developer and managing agent of the development; economic duress; negligent design, manufacture and assemblage; negligent oversight of repairs; breach of contract; strict liability; breach of warranty; fraudulent misrepresentations; emotional distress; unjust enrichment; and a violation of 42 U.S.C. § 1983. North American is individually named in five counts. These allege, in turn, negligent construction; breach of contract; strict liability; breach of warranty; and fraudulent misrepresentation. Four counts name both the Authority and North American; they assert failure to disclose concealed material defects; consumer fraud; breach of the duty of good faith and fair dealing; and breach of the covenants of good faith and quiet enjoyment. Three counts are directed at Residential Warranty and Merchants Insurance; they allege breach of warranty, consumer fraud and seek a declaratory judgment of plaintiffs' rights against both defendants. T.R. Arnold, Elkin/Sobolta and D'Alessandro are named separately in one count each; plaintiffs assert negligent inspection against T.R. Arnold, professional negligence against Elkin/Sobolta and breach of contract and negligence (in one count) against D'Alessandro.

II
The Authority owned land in Mahwah upon which it erected this development, which comprises eighty-nine condominium units. The Authority proposed to rent fifty-four of the units to qualified tenants and to sell the remaining thirty-five to purchasers who could meet certain specified financial criteria and would agree to certain financial restrictions in the event of resale. Those restrictions, which limited potential purchasers to those who also met financial criteria set by the Authority and correlated any increase in price to the Consumer Price Index, were contained both within the contract of sale and the master deed. Because the number of individuals interested in purchasing the units exceeded the number available, the Authority ultimately selected the initial owners through a lottery.
The master deed provided that the Authority would serve as the managing agent for the development in its initial stages. By 1991, when the unit owners had assumed control of the Association's board, the Authority's contract as managing agent was not renewed.
In 1989, the project was completed and the individual plaintiffs purchased their units. According to plaintiffs, problems developed quickly. They have included within their appendix a series of letters, the earliest of which is dated May 1989, from unit owners to the Authority complaining of defects such as cracks in the walls, leaks, walls bowing, windows not working. The Authority made numerous service calls, correcting some but not all of the alleged defects.
When the problems persisted, the Association commenced this litigation in 1993. In 1994, the Association obtained an expert's report that the construction was "of poor quality and not in keeping with construction industry standards." The report identified a number of specific problems. According to the report, because of improper installation of the roof framing, some of the roofs were said to be in imminent danger of collapse. The report also noted that the modular units had been improperly anchored to one another; weight levels and stress were not evenly distributed among the two-story units.
Before proceeding to analyze the correctness of the trial court's orders, we must note that our review of this matter has been hampered by the failure of the parties and the trial court to identify those claims asserted by individual unit owners as opposed to those claims asserted by the Association and to identify when each of *524 those claims arose. All-encompassing assertions and denial of fault are not conducive to precision in analysis. Neither have the parties identified those claims which relate to common elements, and thus may be properly brought by the Association, and which claims relate to damage to individual units, and thus must be brought by the unit owners. Siller v. Hartz Mountain Assoc., 93 N.J. 370, 380-82, 461 A.2d 568 (1983).

III

A
One of the fundamental issues to be addressed is whether any portion of plaintiffs' claims against the Authority are subject to the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3. Housing authorities have been considered public entities for purposes of the tort claims statute. Bligen v. Jersey City Hous. Authority, 131 N.J. 124, 131, 619 A.2d 575 (1993); English v. Newark Hous. Authority, 138 N.J.Super. 425, 428-29, 351 A.2d 368 (App.Div.1976). The Authority asserts it is entitled to immunity under various portions of the Act.[2] Other defendants claim derivative immunity. Vanchieri v. New Jersey Sports & Exposition Authority, 104 N.J. 80, 514 A.2d 1323 (1986).
Analysis of whether the Authority is entitled to assert defenses under the Tort Claims Act involves consideration whether the Authority, when it commenced this development and took upon itself the role of general contractor, lost the public entity defenses to which it would otherwise unquestionably be entitled. The question is not without difficulty; there is no clear law and there are strong countervailing policy considerations on both sides.
The Authority is a public entity and deals with public funds. An award of damages to these plaintiffs could well reduce the funds available to assist other individuals in need of housing assistance. Further, the Tort Claims Act contains a specific prohibition against imposing liability upon a public entity upon theories of strict liability, implied warranty or products liability. N.J.S.A. 59:9-2b. Such a clear declaration of policy by the legislature is not to be lightly disregarded.
In addition, we must be concerned about the potential ramifications of a decision abrogating immunity in such an instance. The Authority, in an attempt to provide affordable housing, acted in a manner that went beyond what might be considered a traditional role of merely renting apartments below market rates. By offering a portion of these units for sale, it attempted to provide an asset which would appreciate in value over time and thus provide an economic benefit to the unit owner that would presumably reduce the owner's future need for public housing assistance. Further, by constructing a development in which a portion of the units would be owner-occupied, it presumably sought to develop a site in which all would benefit by maintaining and improving the development. Imposing tort liability upon the Authority in such an instance could have the result of discouraging development of innovative and creative techniques to deal with a critical shortage of affordable housing.
Various courts have taken judicial notice of a shortage in New Jersey of decent affordable housing. County of Morris v. Riverview Condominiums, Inc., 304 N.J.Super. 322, 331, 700 A.2d 884 (App.Div.1997); Samaritan Ctr. v. Englishtown, *525 294 N.J.Super. 437, 449, 683 A.2d 611 (Law Div.1996). New Jersey is committed to meeting the state-wide need for decent, affordable housing. The Hills Dev. Co. v. Township of Bernards, 103 N.J. 1, 21, 510 A.2d 621 (1986); Southern Burlington County N.A.A.C.P. v. Township of Mt. Laurel, 92 N.J. 158, 456 A.2d 390 (1983). We should not craft our decisions in a manner that could impede attempts to alleviate that shortage.
We are also cognizant of the fact, however, that an individual who purchased a condominium from a private developer could have rights these plaintiffs would be denied if we were to conclude the Authority is entitled to assert public entity defenses. Our Supreme Court has, in certain instances, been reluctant to deprive an injured party of a cause of action against a public entity when the same party could have had a cause of action if the injury had occurred on private land. Bligen v. Hous. Authority, supra, (defendant Housing Authority not entitled to Tort Claims Act immunity when resident slipped and fell on snow and ice in the parking lot).
On balance, we consider that the greater weight of the policy factors comes down on the side of permitting the Authority to invoke the protections of the Tort Claims Act. A ruling that the Authority lost its public entity defenses by undertaking the development would represent a significant departure from existing law. Courts should be cautious in sanctioning novel causes of action against public entities. Ayers v. Jackson Twp., 106 N.J. 557, 574-75, 525 A.2d 287 (1987); King by King v. Brown, 221 N.J.Super. 270, 276-277, 534 A.2d 413 (App.Div.1987). We thus conclude that defendant Authority is entitled to assert all the defenses available to it under the Tort Claims Act.[3]

B
It is undisputed that none of the individual plaintiffs ever filed a notice of claim with the Authority, N.J.S.A. 59:8-3, and that the Association's late notice of claim, filed pursuant to leave granted on March 31, 1992, N.J.S.A. 59:8-9, specified that its claim arose on March 31, 1991. (Plaintiffs have made no argument on appeal that it was error to limit the Association's claim in this fashion.) Not only is it impossible to tell from this record which of the claims relate to the common elements and which relate to the individual units, it is also impossible for us to tell from the record which of the Association's claims arose prior to March 31, 1991 and could be subject to dismissal for failure to file a notice of claim and which claims arose after that date.
The individual plaintiffs assert that various letters of complaint forwarded to the Authority should be construed as notices of claim under the Tort Claims Act. Even if we were to agree, for purposes of this opinion, that those letters could constitute a sufficient notice of claim under N.J.S.A. 59:8-4, plaintiffs' individual tort claims against the Authority would still be subject to dismissal because N.J.S.A. 59:8-8 requires that suit be instituted within two years of accrual of the claim.
Logic requires that the letters upon which plaintiffs rely could not constitute notices of claim unless the claims had accrued by the dates of the letters. Here, suit was not instituted until March 1993. *526 Only three of the individual letters to which plaintiffs point were written within two years of that date: the letter of Gloria Melendez dated March 27, 1991; the letter of Nancy Vetter of July 1991 and the letter of Rajendra Patel of July 1991. The first bears the handwritten notation that the problems discussed had been resolved to her satisfaction. The second is merely a draft of proposed revisions to a written agreement to make certain repairs. The third refers to a missing piece of wooden framing and contains the written notation that the matter has been repaired. These three documents provide no basis to be considered sufficient notices of claim under N.J.S.A. 59:8-4 for the sixty-four named plaintiffs.
We recognize that there are certain additional letters from the Association dated within that two-year framework but those letters we consider clearly insufficient under N.J.S.A. 59:8-4 for there is no identification of affected units and owners. We are satisfied the trial court correctly dismissed the tort claims of the individual plaintiffs against the Authority.
Because, however, of the failure to identify which of the Association's claims arose prior to March 31, 1991 and which arose subsequently, we are unable to determine which of the Association's claims may be considered viable under the notice provisions of the Tort Claims Act and which are subject to dismissal. Such initial delineation is the responsibility of the trial court, after having received appropriate submissions from the parties on the issue.

C
We are satisfied, nonetheless, that certain counts of plaintiffs' complaint are insufficient as a matter of law under the Tort Claims Act, without regard to whatever notice may have been provided to the Authority and without regard to the date the claim allegedly accrued. We note, for instance, that Count 22 seeks damages from the Authority for infliction of emotional distress. There has been no compliance, however, with the threshold requirements of N.J.S.A. 59:9-2 or Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366, 544 A.2d 857 (1988). The trial court correctly granted summary judgment on that count. Further, having concluded that the Authority is entitled to defenses available under the Tort Claims Act, Count 14, which alleges strict liability, and Count 16 to the extent it asserts implied warranty, were properly dismissed against the Authority.

D
The same policy considerations that we set forth earlier in analyzing whether the Authority may invoke the Tort Claims Act in defense of these claims guides our determination of the question whether the Authority may be subject to liability under the Consumer Fraud Act. (N.J.S.A. 56:8-1 to -48).
There is no reported New Jersey case directly analyzing this question. In Zorba Contractors, Inc. v. Newark Hous. Authority, 282 N.J.Super. 430, 435, 660 A.2d 550 (App.Div.1995) we held that the Newark Housing Authority could qualify as a consumer for purposes of prosecuting a consumer fraud claim. Because a public entity may pursue a claim for consumer fraud does not require that it may be found responsible for consumer fraud. The underlying policy considerations involved in the two analyses are vastly different. In Barry v. New Jersey State Highway Authority, 245 N.J.Super. 302, 311, 585 A.2d 420 (Ch.Div.1990) Judge Gibson decided that the Highway Authority was not subject to suit under the consumer fraud statute in connection with its sale of tokens for use on the Garden State Parkway. In Tuxedo Beach Club Corp. v. City Fed. Sav. Bank, 749 F.Supp. 635 (D.N.J.1990) the District Court concluded that Resolution Trust Corporation could be sued under the Consumer Fraud Act for the actions of the failed institution for which it had been *527 appointed receiver but could not be held liable for punitive damages.
We are satisfied that the Authority is not subject to suit under the consumer fraud statute for its activities in connection with this development. We reach this conclusion for several reasons. We recognize that our Supreme Court has recently recognized that a public entity can be held liable for punitive damages under a claim presented pursuant to the Law Against Discrimination, Cavuoti v. New Jersey Transit, 161 N.J. 107, 132-34, 735 A.2d 548 (1999) and a claim presented pursuant to the Conscientious Employee Protection Act, Abbamont v. Piscataway Bd. of Educ. 138 N.J. 405, 428, 650 A.2d 958 (1994). We do not read those decisions to indicate, however, that public entities can be exposed to the treble damage and attorneys fee provisions of the consumer fraud statute.
We note, for instance, that consumer fraud actions do not require a heightened standard of proof as is necessary to obtain punitive damages under the Law Against Discrimination. Cavuoti, supra, 161 N.J. at 133, 735 A.2d 548. The Consumer Fraud Act is to be applied broadly in light of the statute's remedial purpose. Lemelledo v. Beneficial Management Corp. of Am., 150 N.J. 255, 264, 696 A.2d 546 (1997). An unwitting regulatory violation may be sufficient to trigger strict liability for consumer fraud. Cox v. Sears, Roebuck & Co., 138 N.J. 2, 18-19, 647 A.2d 454 (1994). Even actions taken in good faith may subject the actor to liability for consumer fraud. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604, 691 A.2d 350 (1997).
In our view, it would be contrary to the expressed policies of the Tort Claims Act if we were to conclude that the Authority could be held responsible under the Consumer Fraud Act. We thus find it unnecessary to consider whether the Association could be considered a consumer for purposes of the statute. City Check Cashing, Inc. v. National State Bank, 244 N.J.Super. 304, 582 A.2d 809 (App.Div.), certif. den. 122 N.J. 389, 585 A.2d 391 (1990).
Judge Kestin concludes that our determination on this issue is premature; he expresses the view that "[i]t would be better to let the case mature and the proofs develop .... and let the issues to flesh out more fully ..." We respectfully disagree.
Plaintiffs filed their complaint in March 1993. The Authority's motion for summary judgment was not argued until February 20, 1998, nearly five years later. Plaintiffs had ample time to develop their case and have not contended otherwise.
The trial court correctly concluded that the Authority was not subject to suit for consumer fraud and correctly dismissed count 23 against the Authority.

E.
We have not addressed with specificity all the remaining counts against the Authority for in large measure there will have to be an initial division of the Association's claims according to the date of accrual, as we have already noted. We note, however, that the fact that we have concluded that the Authority is entitled to the benefits of the tort claims statute does not mean that we have concluded that the Authority is wholly immune from suit for its actions. We have ruled merely that the Authority is entitled to present its tort claims act defenses to these remaining counts, not that it is entitled to prevail as a matter of law on those defenses.
Certain of these remaining counts, however, assert claims that do not arise under the Tort Claims Act, such as breach of contract, asserted in count 6. The Authority's public entity defenses are, of course, immaterial to these counts.
The trial court dismissed the claims for breach of contract and breach of express warranty in a conclusory fashion. It merely noted that plaintiffs had failed to demonstrate a breach of the contract of sale and that the contract did not "contain *528 a specific warranty as to the quality of construction or level of quality of workmanship." Such an approach is contrary to the views expressed in Aronsohn v. Mandara, 98 N.J. 92, 484 A.2d 675 (1984). In that case, plaintiffs sued for damages, alleging that defendants had not constructed a patio annexed to their home in a workmanlike manner. In the course of its opinion, the Court said "[W]hen, as in this case, there is no express contractual provision concerning workmanship, the law implies a covenant that the contract will be performed in a reasonably good and workmanlike manner." 98 N.J. at 98, 484 A.2d 675. That principle is fully applicable here. The trial court erred when it dismissed plaintiffs' claim against the Authority for breach of contract.
In count 28, plaintiffs asserted a claim against the Authority under 42 U.S.C. § 1983. Claims asserted under 42 U.S.C. § 1983 are not subject to the notice of claim provisions of the Tort Claims Act. Fuchilla v. Layman, 109 N.J. 319, 537 A.2d 652, cert. den. 488 U.S. 826, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). However, we are satisfied the trial court was clearly correct in granting summary judgment to the Authority on that count and that the claim does not warrant extended discussion in a written opinion for it would have no precedential value. R. 2:11-3(e)(1)(E).
There is no doubt that public housing authorities can, in certain instances, be subject to suit under § 1983. Wright v. City of Roanoke Redev. and Housing Auth., 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). (Tenants entitled to assert a § 1983 action alleging that defendant's surcharge for excess utility consumption was in violation of federal statutory percentage income limitation on rent.)
We earlier stated in Morgan v. Union County, 268 N.J.Super. 337, 633 A.2d 985 (App.Div.1993), certif. den. 135 N.J. 468, 640 A.2d 850 (1994) that a governmental body is not liable under 42 U.S.C. § 1983 unless the complained-of conduct represents a governmentally-sanctioned official policy. 268 N.J.Super. at 363-64, 633 A.2d 985. Plaintiffs have failed to demonstrate what official policy of the Authority would give rise to a § 1983 claim.
We close this section by noting that it is not immediately apparent whether certain of plaintiffs' claims can properly be characterized as tort claims and thus within scope of our holding that the Authority may assert defenses to them under the Tort Claims Act. The trial court made no delineation of the particular remaining counts as to whether it considered them to sound in tort or otherwise. The Supreme Court outlined the difficulties that may be involved in such a delineation in Alloway v. General Marine Industries, 149 N.J. 620, 626-39, 695 A.2d 264 (1997). We decline to make an initial determination on our own. The parties can address the issue on remand.

IV
We turn now to the claims asserted against North American and T.R. Arnold. The trial court concluded they were entitled to share in the Authority's public entity defenses under the principle of derivative immunity and granted them summary judgment. We are satisfied that, on the record presented, the trial court erred in that decision.
Our Supreme Court set forth the principles governing application of derivative immunity in Vanchieri v. New Jersey Sports and Exposition Authority, supra, when it stated "When a public entity provides plans and specifications to an independent contractor, the public contractor will not be held liable for work performed in accordance with those plans and specifications." 104 N.J. at 86, 514 A.2d 1323. A party seeking the benefits of derivative immunity has the burden of demonstrating the affirmative defense. Id. at 87-88, 514 A.2d 1323.
Here the record is insufficient to demonstrate that these modular units were *529 manufactured, assembled and erected in accordance with plans and specifications provided by the Authority. All the contract documents refer to the modular units simply as "Jackson III," as if referring to a particular catalogue model and style. North American's Director of Engineering referred to these units in his deposition as standard North American units and agreed they were "off-the-shelf." He also testified that he oversaw the engineering of the drawings for the project. Further, within the Addendum to the contract between the Authority and North American referred to earlier, while the Authority was responsible for site preparation, North American was responsible for erection of the units it had manufactured and delivered to the site.
On appeal, North American stresses the Authority "approved" the design of these modular units. It has not shown, however, that the units were fabricated and erected in accordance with plans and specifications developed and prepared by the Authority.
The claims of T.R. Arnold to derivative immunity is similarly deficient. T.R. Arnold was engaged to inspect these units during the course of manufacture to assure their proper construction. There is absolutely no showing that the manner in which T.R. Arnold performed these inspections was directed and controlled by the Authority.
Because these defendants are not entitled to derivative immunity, they may not invoke the notice of claim provisions against the individual plaintiffs. The individual plaintiffs may thus continue to press their individual claims against the private defendants.
We do not address the question whether these two defendants could be entitled on any other basis to summary judgment on any of the particular counts in which they were joined because the trial court did not address that question. It relied entirely on the principle of derivative immunity.

V
We turn now to the claims plaintiffs have presented against Residential Warranty and Merchants Insurance. Plaintiffs have named these defendants in three counts of their complaint; they allege breach of warranty, seek a declaratory judgment and seek damages under the Consumer Fraud Act.
When each individual unit owner closed title, he received a booklet describing the ten year limited warranty covering the unit. This warranty was required under the New Home Warranty and Builder's Registration Act, N.J.S.A. 46:3B-1 to -20, and paragraph 26 of the contract of sale. The Authority enrolled these units in the warranty program administered by defendant Residential Warranty and insured by defendant Merchants Insurance.
In 1992, Residential Warranty and Merchants Insurance entered an agreement between themselves, commuting the obligation of Merchants Insurance to insure these warranties. Residential Warranty released Merchants Insurance from liability and, in return, Merchants Insurance issued a premium refund of $123,906 to Residential Warranty. Residential Warranty continues to acknowledge its responsibility under the terms of its warranty agreement.
Plaintiffs point to this commutation agreement and claim it constituted a breach of warranty and a consumer fraud. We are satisfied the trial court correctly concluded it was neither.
We reach this decision for several reasons. Plaintiffs have failed utterly to explain how this commutation agreement, reached some three years after closing of title, could be considered a consumer fraud in connection with their purchase of their units. They did not purchase the warranty and the depositions included in the record on appeal make clear that the existence of an insurance-backed warranty was immaterial to the decision to purchase. Plaintiffs have also failed to show that this *530 commutation agreement has resulted in any loss to them in light of Residential Warranty's explicit acknowledgment that it remains fully responsible to comply with the terms of the warranty it issued. We were informed at oral argument, without objection, that Residential Warranty has yet to receive a claim under the warranty for the alleged defects in the common elements. According to the record on appeal, only two of the unit owners presented a claim to Residential Warranty. There is no showing they have not been resolved satisfactorily.
We have concluded, perhaps from an excess of caution, that the trial court should not have dismissed Count 30 of the complaint which seeks a declaratory judgment. Rather, the court should, at an appropriate juncture, enter a judgment setting forth the respective rights and responsibilities of the parties under the warranty.

VI
We turn finally to the claims asserted against Elkin/Sobolta and D'Allessandro.
Within their complaint as amended, plaintiffs assert only one claim specifically against Elkin/Sobolta, for professional negligence. Count 23 seeks judgment against all defendants for consumer fraud; Count 22, which claims damages for emotional distress, is ambiguous as to whether it is directed at Elkin/Sobolta.
We will assume for purposes of the completeness of this opinion that plaintiffs' complaint sought to include Elkin/Sobolta within the scope of these latter two counts as well. We are satisfied, nonetheless, that Elkin/Sobolta was entitled to summary judgment on all three claims, except to the extent noted below. As to the claim for damages for emotional distress, we have already noted plaintiffs' failure to satisfy the elements of Buckley v. Trenton Sav. Fund Soc'y, supra. As to the claim for consumer fraud, there was no showing that this defendant "involved [itself] ... as a principal or a retained professional in a real estate marketing venture... [and] permit[ted its] services to be held out as a part of what is being sold...." Blatterfein v. Larken Assoc., 323 N.J.Super. 167, 183, 732 A.2d 555 (App.Div.1999). As we noted in that case "[w]here the question is solely one concerning the quality of those professional [architectural] services, there may be no adequate basis for asserting liability [against an architect] under the Consumer Fraud Act." Ibid. Our detailed review of the record in this matter has not pointed us to anything which would indicate an expansion of those views is warranted here.
Plaintiffs' claim against Elkin/Sobolta for professional negligence is not easily quantified. It is undisputed that this project was not built in accordance with the design originally prepared and formulated by Elkin/Sobolta. Clearly, it can have no professional liability for a deficiency in plans it did not prepare.
That the Authority turned to modular construction did not end the involvement of Elkin/Sobolta with this project, however. For an initial period of time, Elkin/Sobolta performed certain inspection services at the site for the Authority before the Authority would make payment for work performed. Eventually, Elkin/Sobolta told the Authority it could no longer continue to perform this function. From that point on, Elkin/Sobolta merely performed a ministerial function of approving requisitions for payment after being assured by the Authority that the particular work had been performed. It is impossible to tell from this record when this shift in function occurred or if the nature of the work that had been performed up to that time was such that Elkin/Sobolta should have discovered and alerted the Authority to the presence of defective work.
We have concluded that the principles enunciated in Brill v. Guardian Life Ins. Co., 142 N.J. 520, 666 A.2d 146 (1995) *531 required that this defendant's motion for summary judgment on the claim for professional negligence be denied, at least at this juncture of the case.
The remaining claim is that against D'Alessandro which provided landscaping services in connection with the construction of this development. It is directly named as a defendant only in Count 29, which alleges both breach of contract and negligence. D'Alessandro argued below it was entitled to summary judgment on the basis of derivative immunity and the trial court agreed.
Within their brief, plaintiffs' sole reference to D'Alessandro is contained in one conclusory sentence, in which they state "the trial court ignored the facts and misapplied the law" when it ruled in D'Alessandro's favor on the basis of derivative immunity.
Plaintiffs having failed to set forth any legal argument to support their claim of error, we consider the issue waived. McGarry v. Saint Anthony of Padua, 307 N.J.Super. 525, 537, 704 A.2d 1353 (App.Div.1998); Bolyard v. Berman, 274 N.J.Super. 565, 582 n. 6, 644 A.2d 1122 (App.Div.), certif. den. 138 N.J. 272, 649 A.2d 1291 (1994). To the extent D'Allessandro is included with Counts 22 and 23, the doctrine of waiver equally obtains.

VII
For the reasons we have expressed, the orders under review are affirmed in part and reversed in part. The matter is remanded to the trial court for further proceedings.
KESTIN, J.A.D., concurring and dissenting.
I write separately to note my respectful disagreement with my colleagues' disposition of a single issue in this complex matter, but I would be remiss if I failed to express my admiration for Judge Wefing's opinion which, with estimable clarity, organizes, digests and analyzes a host of vaguely contoured issues. The one exception aside, I subscribe to the rationales articulated and the results reached.
My point of difference is with the holding in part III.D, that, as a matter of law on account of public policy considerations, the Authority should be immune from suit under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -91 (the Act), because it is a governmental entity. I recognize that we would be breaking new ground to hold the Authority subject to the Act, but we should not shrink from doing so to the extent required to promote the policies and the canons of liberal construction which govern the application of "one of the strongest consumer protection laws in the nation." Cox v. Sears Roebuck & Co., 138 N.J. 2, 15, 647 A.2d 454 (1994) (quoting Governor's Press Release for Assembly Bill No. 2402, at 1 (Apr. 19, 1971)).
We should avoid deciding issues in a vacuum. Plaintiffs have made a prima facie showing, sufficient to survive the motion for summary judgment, that the Authority violated Consumer Fraud Act standards. It would be better to let the case mature and the proofs develop so that we could have a fuller understanding, if indeed plaintiffs meet their ultimate burden of proof, of just how those standards were transgressed and to what extent. We would then have a more concrete basis than we presently have for determining whether and how to balance the competing policies at play. See, e.g., Salomon v. Eli Lilly and Co., 98 N.J. 58, 484 A.2d 320 (1984); Jackson v. Muhlenberg Hospital, 53 N.J. 138, 142, 249 A.2d 65 (1969) ("The issue is a very important one involving highly significant policy considerations and obviously should not be decided on the wholly inadequate record before us."). It might well be that the consumer fraud violations were so egregious or so extensive as to require a holding limited in scope that this public entity is liable under the Act because of the special circumstances developed, while recognizing that as a general matter public entities, even *532 when engaged in pursuits that are normally conducted by private parties, might not be subject to the treble damages and counsel fee remedies which characterize the Act.
In short, I lack any confidence that we have functioned justly by barring, at this juncture, the individual plaintiffs from claiming consumer fraud protection with regard to the purchase of their homes. I cannot understand how we can say as a threshold matter that the public policies limiting the liability of governmental entities necessarily trump the equally imperative public policies that undergird the Consumer Fraud Act. I would reverse the trial court's holding on that ground as well as the others disallowed by my colleagues, and permit the issue to flesh out more fully before it is adjudicated.
NOTES
[1] The Authority's third-party complaint named a number of additional entities as third-party defendants. The record does not disclose whether the Authority served any of them or if they ever entered an-appearances in this matter.
[2] The Authority, in its brief on appeal, cites the statute of limitations (N.J.S.A. 59:8-8) and notice provisions (N.J.S.A. 59:8-3) of the Tort Claims Act, the statutory ban to implied warranty and strict liability claims (N.J.S.A. 59:9-2(b)) and immunity for discretionary activities (N.J.S.A. 59:2-3). Evidently recognizing that the condominium portion of the development, having been sold to private individuals, is not public property it does not refer to plan and design immunity under N.J.S.A. 59:4-6. Leibig v. Somerville Senior Citizens Hous., Inc., 326 N.J.Super. 102, 740 A.2d 686 (App.Div.1999).
[3] In reviewing the record on appeal, we have reviewed the terms of the contract between the Authority and North American. The contract contains an Addendum, article Ten of which sets forth the representations of the Authority. Under section (f), the Authority represented "it is subject to suit and may not claim sovereign immunity as a governmental or quasi-governmental agency or for any other reason." No party has addressed the significance of that clause in the context of this suit. We conclude from this silence that the parties viewed this language, describing the relationship between the Authority and North American, as having no bearing on claims asserted by strangers to that contract. We express no views on the impact, if any, of that language on the cross-claims asserted by the Authority and North American.